United States District Court
Southern District of Texas
ENTERED
October 01, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ROSTAN SOLUTIONS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:22-CV-00122** |
| | § | |
| **CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rostan Solutions, LLC ("Rostan") is a Florida-based consulting services company that helps clients navigate FEMA Public Assistance and Hazard Mitigation Grant Programs and provides other disaster relief services. In January 2018, Rostan entered into a services contract with Corpus Christi Independent School District ("CCISD") to assist in securing Federal Emergency Management Agency ("FEMA") grants for disaster recovery efforts related to damages sustained by the district during Hurricane Harvey.

The initial contract contained a spending cap that limited the amount CCISD was authorized to pay Rostan to $400,000. That cap was increased in September 2018 to $1,000,000. A dispute arose in May 2019 over how much Rostan was owed under the amended provision leading Rostan to file this lawsuit on June 3, 2022. Rostan alleges that CCISD breached the contract and its amendment by failing to pay for services performed by Rostan beyond the $1,000,000 limit.

Before the Court is CCISD's Motion for Summary Judgment. (Dkt. No. 32). For the reasons below, the Court **GRANTS** CCISD's motion. (Dkt. No. 32).

## I. BACKGROUND

Hurricane Harvey struck Texas's gulf coast in August 2017, causing significant damage. (Dkt. No. 32 at 6–7). CCISD, an independent school district located in Corpus Christi, was hit particularly hard, suffering widespread property damage. (*Id.*); (Dkt. No. 34 at 6). Seeking to obtain federal funding for disaster recovery, CCISD contracted with Rostan to acquire federal grants from FEMA. (Dkt. No. 32 at 7); (Dkt. No. 34 at 6). Rostan is a consulting services company based in Florida that "provides specialized consulting services to its customers by assisting them with procuring grants through . . . disaster recovery and mitigation programs, including FEMA's Public Assistance and Hazard Mitigation Grant Programs." (Dkt. No. 34 at 5).

### A. THE JANUARY 2018 CONTRACT

The Parties signed an initial agreement in January 2018. (Dkt. No. 32 at 8); (Dkt. No. 34 at 6). Rostan's president, Darius Stankunas ("Stankunas") executed the contract on Rostan's behalf. (Dkt. No. 15-1 at 6). As a Texas public school district, CCISD was required to abide by certain procedural requirements and comply with the Texas Education Code in executing the agreement. (Dkt. No. 32 at 8). Board policy promulgated under the Code required CCISD to get approval from its Board of Trustees for any contracts over $50,000. (*Id.*). CCISD obtained this approval, and the contract was signed by the Board President, Superintendent of Schools, Director for Purchasing and Distribution, and CCISD General Counsel. (*Id.*); (Dkt. No. 15-1 at 6-7).

The terms of the contract stated that Rostan would "assist [CCISD] with Disaster Recovery efforts and federal funding pursuits including, but not limited to the FEMA Public Assistance and Hazard Mitigation Grant Programs. . . . in the support of the recovery associated with damage sustained in Hurricane Harvey." (Dkt. No. 15-1 at 1). In return, CCISD agreed to pay "a *not to exceed amount of $400,000*." (*Id.* at 2) (emphasis in original). Rostan was required to submit invoices with a properly approved purchase order number before payment. (*Id.*). Any amendment to the contract would require mutual agreement of the parties in writing, subject to the same Board policies noted above. (Dkt. No. 32 at 8–9).

Under this agreement, Rostan began providing "consulting services for remediation, stabilization and repair" of CCISD campuses and properties. (Dkt. No. 34 at 6). Rostan negotiated with FEMA and the Texas Division of Emergency Management ("TDEM") on behalf of CCISD and sent employees to CCISD property to attend site inspections. (Dkt. No. 34 at 6).

**B. THE SEPTEMBER 2018 AMENDMENT**

By the end of June 2018, Rostan had payments of $391,231.30 due. (Dkt. No. 15-4 at 1); (Dkt. No. 32-4 at 3, 7–12). Because the contractual cap had nearly been reached,[1] the parties began negotiating an amendment to increase the contractual cap to $1,000,000. (Dkt. No. 32 at 9); (Dkt. No. 34 at 7). Rostan contends that CCISD instructed it to continue

[1] CCISD paid Rostan $234,779.68 on September 5, 2018. (Dkt. No. 15-4 at 1). The remaining $156,450.62, along with additional invoices which collectively exceeded the $400,000 limit, were paid on October 1, 2018, after the amendment was signed. (*Id.*).

providing services beyond $400,000 with the understanding that an amendment would be signed soon. (Dkt. No. 34 at 7). CCISD disputes that it "made any assurances to [Rostan] regarding the Agreement beyond what was stated in the contract and amended agreement." (Dkt. No. 29 at 2).

The amendment, like the initial contract, required approval from CCISD's Board of Trustees. To obtain this approval, on August 16, 2018, Arnulfo Gonzalez ("Gonzalez")—CCISD's Director for Purchasing and Distribution—asked Rostan's lead consultant for the CCISD contract, Tommy Horton ("Horton"), to provide a justification for "why we are going from $400k to one million dollars on the amendment" and to assist in drafting language to present to the Board of Trustees. (Dkt. No. 34 at 7–8); (Dkt. No. 43-1 at 297).

Horton responded on August 17, 2018, by stating that, in general, Rostan initially contracts with clients for a lower amount than what its services will eventually require because it is "nearly impossible" to know the total price "on a full FEMA claim during the initial stages." (Dkt. No. 43-1 at 295). Because Rostan had a better understanding of the claim in August 2018, Horton stated that he expected it to take three to four years and cost around $3–4 million. (*Id.* at 296).

Gonzalez thanked Horton and said that "[t]here's enough information here that I can pull from." (*Id.* at 295). He submitted a proposal to the Board and obtained

approval.[2] (*See* Dkt. No. 43-1 at 45). The amendment was signed and executed by the proper legal representatives of both parties in September 2018. (Dkt. No. 15-2 at 2).

The amendment increased the contractual cap by $600,000, bringing the total contract amount up to $1,000,000. (Dkt. No. 15-2 at 1). As justification for the increase, the amendment provided that: "This increased amount is to add to Provider's scope of services in assisting with additional Disaster Recovery efforts now that [CCISD] is aware of the total damage impact by Hurricane Harvey to its schools and other properties." (*Id.*). "All other terms and conditions of the Agreement" remained "unchanged, and in full force and effect." (*Id.*).

### C. CCISD's Alleged Breach

Rostan continued its work after the amendment was signed, (Dkt. No. 34 at 9–10), and CCISD continued to pay invoices submitted by Rostan, (*see* Dkt. No. 15-4 at 1); (Dkt. No. 32 at 10). Rostan regularly received payment for its invoices beyond the original $400,000 through November 2018, bringing the total amount to $841,977.93. (Dkt. No. 32-4 at 3, 13–17).

By May 2019, however, the parties' relationship had soured. In November 2018, CCISD's Chief Financial Officer, Donna Hohn ("Hohn"), began to express her concern to Rostan that "nothing had been obligated by FEMA, meaning FEMA had not promised [CCISD] any funds in order to make repairs." (Dkt. No. 32 at 10); (Dkt. No. 32-4 at 26). In response to Rostan's eighth invoice—which, when paid in October 2018, brought the

---

[2] In his deposition, Gonzalez asserts that none of the language Horton provided was actually included in the proposal he submitted to the Board. (Dkt. No. 43-1 at 45).

total contract price to $841,977.93, (Dkt. No. 15-4 at 1)—Hohn also informed Rostan that it needed to speak with Gonzalez concerning a new change order to increase the contractual cap again, (Dkt. No. 32 at 10); (Dkt. No. 32-4 at 3–4, 26, 29).

On May 30, after nearly six months had passed since Rostan's last invoice, Hohn emailed Horton expressing frustration that CCISD had already paid out over $800,000 and had not heard from Rostan in the months since. (Dkt. No. 32 at 11); (Dkt. No. 32-4 at 34) ("I have no idea how much CCISD owes Rostan."). Hohn continued to ask Rostan to submit invoices and to update CCISD on how much it owed, but did not receive a substantive response until November 2019. (Dkt. No. 32 at 11). At that point, CCISD had still not received any money from FEMA. (Dkt. No. 32 at 10–11).

Finally, on November 20, 2019, Horton replied to Hohn with an updated list of invoices and requested that CCISD pay invoices nine and ten. (Dkt. No. 32 at 11); (Dkt. No 32-4 at 39-40). Hohn informed Horton that there were insufficient funds in the purchase order to pay both invoices in full. (Dkt. No. 32 at 11); (Dkt. No. 32-4 at 4, 39). In December 2019, CCISD paid invoice nine, but only part of invoice ten because it would have exceeded the $1,000,000 contract limit.[3] (*See* Dkt. No. 15-4 at 1). CCISD did not begin receiving reimbursement from FEMA until December 23, 2019. (Dkt. No. 32 at 11); (Dkt. No. 32-4 at 4); (Dkt. No. 15-4 at 1).

Rostan continued to submit additional invoices through September 2020, bringing the total invoiced amount to $2,607,605.71. (Dkt. No. 15-4 at 1–2). According to Rostan,

---

[3] CCISD made a partial payment of invoice ten in the amount of $83,859.40, bringing the total paid to $999,999.00. (Dkt. No. 32 at 11); (Dkt. No. 15-4 at 1).

it continued performing work under the contract at CCISD's direction despite Rostan having been paid essentially the entire total contract amount. (Dkt. No. 34 at 12–13). CCISD disputes this. (Dkt. No. 29 at 2). When Rostan requested payment for the outstanding invoices in January 2021, (Dkt. No. 43-9), CCISD refused, (Dkt. No. 41-2 at 2).

On February 21, 2021, CCISD emailed Stankunas to inform him that CCISD was terminating its contract with Rostan. (Dkt. No. 34 at 13); (Dkt. No. 15-5). The letter stated that "[s]ervices were rendered and paid for in full." (Dkt. No. 15-5). Rostan then filed this suit on June 3, 2022, alleging breach of contract for the unpaid $1,607,606.71. (Dkt. No. 1). CCISD moved for summary judgment arguing that Rostan's suit is barred by governmental immunity and, alternatively, that it did not breach its contract with Rostan. (Dkt. No. 32).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2710, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2710). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion"

and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2711).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means

that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. DISCUSSION

In its Motion for Summary Judgment CCISD makes two arguments regarding Rostan's breach of contract claim: (1) that it is protected by governmental immunity from these claims, and (2) that even if governmental immunity was waived, the claim fails as a matter of law.

The Court first addresses whether governmental immunity protects CCISD from Rostan's suit. Holding that such immunity has been waived, the Court turns to Rostan's breach of contract claim. It finds that Rostan's claim fails as a matter of law because the Parties only contracted for services up to $1,000,000. Since both Parties agree CCISD has paid that amount, it is entitled to summary judgment on that ground.

### A. GOVERNMENTAL IMMUNITY

"Sovereign immunity protects the State from lawsuits for money damages." *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002)). "Political subdivisions of the state, including cities, are entitled to such immunity—referred to as governmental immunity—unless it has been waived." *Id.* This immunity deprives a trial court of subject-matter jurisdiction. *Id.*

Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit,

which bars suits against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A governmental entity waives immunity from liability when it voluntarily enters into a contract. *Id.* As such, only immunity from suit is relevant here.

The Texas Supreme Court has recognized that it is the Texas Legislature's responsibility alone to waive or abrogate governmental immunity. *IT-Davy*, 74 S.W.3d at 853. It may do so by statute or by resolution. *Id.* at 854. In both instances, waiver "must be expressed in 'clear and unambiguous language.'" *Id.* at 854 (quoting Tex. Gov't Code § 311.034).

Section 271.152 of the Local Government Code waives immunity from suit for government entities that enter into valid contracts. It provides:

> A local government entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code § 271.152. This language clearly and unambiguously waives immunity from suit. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

Texas law establishes a three-part test for determining whether Section 271.152's waiver of immunity applies: "(1) the party against whom the waiver is asserted must be a 'local government entity' as defined by section 271.151(3), (2) the entity must be authorized by statute or the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is 'subject to this subchapter.'" *Id.* at 134–35 (citing Tex. Loc. Gov't Code §§ 271.151–.152).

The first two prongs of this test are not in dispute. Both Parties agree that CCISD is a local government entity under Texas law, (Dkt. No. 15 at 2); (Dkt. No. 29 at 1), and neither Party contests that CCISD was authorized to enter into the January 2018 contract and its September 2018 amendment. (*See generally* Dkt. No. 32) (arguments from CCISD indicating that it was bound in contract to pay Rostan up to $1,000,000 for services rendered); (Dkt. No. 34) (arguments from Rostan stating that CCISD breached the valid contract between it and Rostan). As such, the Court only addresses the third prong: whether CCISD entered into a contract that is subject to Section 271.152.

The waiver of immunity in Section 271.152 is limited by several other provisions in the subchapter; most relevant here, Sections 271.151(2) and 271.153. *See Zachry Constr. Corp. v. Port of Hou. Auth.*, 449 S.W.3d 98, 106–07 (Tex. 2014). Section 271.151(2) defines a "contract subject to [Section 271.152]" as "a written contract stating the essential terms of the agreement for providing for goods or services to the local government entity that is properly executed on behalf of the local government entity." Courts have broken this provision into five factors: the contract must (1) be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to a local government entity, and (5) be executed on behalf of the local government entity. *See City of Carrizo Springs v. Howard*, No. 04-18-00061-CV, 2018 WL 2943795, at *3 (Tex. App.—San Antonio June 13, 2018, no pet.); *City of Pearsall v. Tobias*, 533 S.W.3d 516, 522 (Tex. App.—San Antonio 2017, pet. denied).

Section 271.153 states that "the total amount of money awarded in an adjudication . . . for breach of a contract [under Section 271.152] is limited to . . . the

balance due and owed by the local government entity under the contract as it may have been amended" and "the amount owed for change orders or additional work the contractor is directed to perform . . . in connection with the contract."

CCISD argues that its contract with Rostan is not subject to Section 271.152, and as a result, immunity from suit has not been waived. (*See* Dkt. No. 32 at 12–13). It points to Section 271.153(a)(1) and claims that this provision limits the waiver of immunity "to amounts upon which the parties have *expressly agreed*." (*Id.*) (emphasis in original). Because Rostan's claim is for payment beyond the $1,000,000 limit—which CCISD argues is the only expressly agreed-to contract price term—it is not a claim for the "balance due and owed" under Section 271.153. (Dkt. No. 32 at 12–13). As a result, the claim falls outside the waiver of immunity. (*Id.*).

Rostan responds that its breach of contract claim does fall within the scope of the immunity waiver because it is a breach of contract claim stemming from the written contract (and its later amendment) to which the parties expressly agreed. (Dkt. No. 34 at 15–17). It argues that Section 271.151 is satisfied by the January 2018 agreement and its September 2018 amendment, (*see id.* at 16), and that Section 271.153 is satisfied because its claim is for "additional work [Rostan was] directed to perform by [CCISD] in connection with the contract," (*id.* at 17–21) (citing first *City of El Paso v. High Ridge Constr., Inc.*, 442 S.W.3d 660, 663–64 (Tex. App—El Paso 2014, pet. denied); and then citing *Zachry Constr. Corp*, 449 S.W.3d 98).

CCISD's argument is unpersuasive. First, it does not adequately account for Section 271.151. Nowhere in its Motion does CCISD dispute that it and Rostan's

agreements in January 2018 and September 2018 are valid "written contract[s]" that state "the essential terms" of Rostan's agreement to provide services to CCISD. (*See generally id.*). In fact, CCISD's entire argument that it is immune from suit and was only required to pay $1,000,000 is premised on the validity of those agreements. Given this, there is no genuine dispute that both agreements satisfy Section 271.151.

Second, CCISD's argument that Section 271.153 limits waiver only to claims for "the balance due and owed" under the contract ignores the provision in Section 271.153 granting waiver for claims related to "additional work the contractor is directed to perform . . . in connection with the contract." Tex. Loc. Gov't Code § 271.153(a)(2).

Claims that assert damages under Section 271.153 fall within the scope of Section 271.152's waiver of immunity. *See Tooke*, 197 S.W.3d at 345-46; *Zachry Const. Corp.*, 449 S.W.3d at 110–14; *High Ridge*, 442 S.W.3d at 671–72. "The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract *once liability has been established*, not to foreclose the determination of whether liability exists." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex. 2010) (emphasis added). "Section 271.153 does not add immunity that § 271.152 takes away; § 271.152 uses § 271.153 to further define to what extent immunity has been waived." *Zachry Const. Corp.*, 449 S.W.3d at 110.

Texas courts have recognized that immunity has been waived even where plaintiffs claim they are owed payment outside of the express written contract amount. *See High Ridge*, 442 S.W.3d at 670–72; *Zachry Const. Corp.*, 449 S.W.3d at 110–14. *High Ridge* is especially relevant to this case. There, El Paso contracted with an independent

contractor to deliver weatherization services to residential properties in the city. 442 S.W.3d at 663–64. The contract expressly stated that the city would not pay the contractor more than $600,000 for services performed under the contract. *Id.* at 664. Despite this, the contractor performed work beyond the contractual cap at the city's direction. *Id.* When El Paso refused to pay for some of the services in excess of the limit, the contractor brought a breach of contract claim and argued that governmental immunity was waived. *Id.*

In holding that immunity was waived under Section 271.152, the court focused on the fact that Section 271.153 explicitly allows plaintiffs who bring breach of contract claims to be awarded the amount owed for additional work they are directed to perform. *Id.* at 671–72. Specifically, the court found that Section 271.153 "do[es] not require that this additional work be supported by a written contract amendment." *Id.* at 672. Because the contract satisfied the requirements of Section 271.151(2) and the contractor's breach of contract claim derived from that contract, Section 271.153 allowed waiver of immunity. *Id.*

Like in *High Ridge,* the written agreements between CCISD and Rostan contain a contractual cap on spending. (Dkt. No. 15-2 at 1). And like *High Ridge*, Rostan claims it performed additional work under the contract at CCISD's request that exceeded this contractual cap. (Dkt. No. 34 at 20–21). The fact that the written agreements did not expressly authorize the additional work performed by Rostan has no effect on whether immunity was waived as to a claim for that additional work. Texas caselaw and Section 271.153(a)(2) make clear that such a claim is allowed. CCISD's argument to the

contrary is best construed as an argument concerning the merits of Rostan's breach of contract claims. *High Ridge*, 442 S.W.3d at 672 ('The City's argument that [the contractor] cannot maintain its breach of contract claim for damages in excess of the $600,000 contractual cap unless there is a properly executed written amendment is in reality an argument that the contract claim will fail on the merits.").

CCISD voluntarily entered into a written agreement with Rostan for its services. Rostan's breach of contract claim, regardless of its merit, is based on that agreement. Under Texas law, governmental immunity does not shield CCISD in that situation. As such, the Court denies CCISD's Motion for Summary Judgment to the extent it argues that immunity has not been waived. Next, the Court addresses the merits of Rostan's breach of contract claim.

### B. Breach of Contract

Under Texas law, a plaintiff must establish the following four elements for a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

The only element at issue here is the third: Whether CCISD breached the contract with Rostan.[4] The only relevant point of contention is whether CCISD breached the contract by failing to make payments in excess of $1,000,000. This essentially boils down to a question of contract interpretation: Did the amendment remove the spending cap that authorized CCISD to make payments? For the reasons stated below, the Court answers this question no.

"The court determines as a matter of law what the contract requires of the parties." *Balfour Beatty Rail, Inc. v. Kansas City So. Railway Co.*, 173 F.Supp.3d 363, 395 (N.D. Tex. 2016) (citing *Meek v. Bishop Peterson & Sharp, PC*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). When interpreting a contract "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The written contract "alone will be deemed to express the intention of the parties." *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981). In determining the true intent of the parties "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker*, 650 S.W.2d at 393 (emphasis in original).

[4] Both Parties agree that there was a valid contract, *see supra* IIA, and that Rostan tendered performance, (Dkt. No. 15 at 3); (Dkt. No. 29 at 1) ("[CCISD] further admits that [Rostan] provided [CCISD] with consulting services for the remediation, stabilization and repair following the destruction of CCISD school."). Because the Court finds that CCISD did not breach the contract, it does not address the fourth element.

The "Payment for Services" provision of the January 2018 contract states that Rostan "will be paid a *not to exceed amount of $400,000*." (Dkt. No. 15-1 at 2) (emphasis in original). It further states that Rostan "will submit an invoice with a properly approved purchase order number for payment." (*Id.*).

The September 2018 amendment changed this provision. The purpose of the amendment was to increase the contractual cap. (Dkt. No. 32 at 9); (Dkt. No. 34 at 7–9). At the time it was signed, CCISD had paid Rostan nearly all of the $400,000 it was authorized to pay. (Dkt. No. 32 at 9); (Dkt. No. 34 at 7). Both Parties agreed that Rostan's services were still needed, and consequently, the contract price needed to be increased. (*See* Dkt. No. 32 at 9–10); (Dkt. No. 34 at 7). Relevant here, the amendment stated that "[t]he payment for services be amended and increased by an amount of $600,000 for a new contract amount of $1,000,000. This increased amount is to add to [Rostan's] scope of services in assisting with additional Disaster Recovery efforts now that [CCISD] is aware of the total damage impact by Hurricane Harvey." (Dkt. No. 15-2 at 1).

According to CCISD, the contract amendment was meant to increase the maximum limit to which it was authorized by the Board to pay Rostan. (Dkt. No. 32 at 9). The amendment did not—and was not meant to—remove the "not to exceed" language from the original contract. (*Id.* at 14–15). As amended, the contract did not authorize CCISD to pay Rostan more than $1,000,000 for services rendered. (*Id.*).

Rostan argues that the amendment did in fact remove the "not to exceed" language and was therefore meant to cover all invoices Rostan submitted for work performed. (Dkt. No. 34 at 9). Rostan points to communications from CCISD employees

before and during the drafting of the amendment that seem to indicate that the employees were aware that the project was going to go over the $1,000,000 budget. (Dkt. No. 34 at 7–9, 22–23). This, Rostan argues, is evidence that CCISD was aware that it was amending the contract to provide Rostan full payment for its work under the contract. (Dkt. No. 34 at 21–23).

Rostan's argument is unconvincing. Accepting such an interpretation would render the specified $600,000 increase in funding meaningless. If the Parties truly intended for CCISD to pay Rostan whatever amount was necessary to complete the job, why specify a contract amount of $1,000,000 instead of doing away with a contractual cap altogether? The reasonable answer is that the Parties did *not* intend for CCISD to pay for Rostan's services in excess of $1,000,000 unless a subsequent amendment was executed. To hold otherwise would read out the specific contract price that the Parties negotiated in the amendment. *See Coker*, 650 S.W.2d at 393.

Because the amendment did not remove the "not to exceed" language, CCISD breached its contract with Rostan only if it failed to pay the $1,000,000 for services rendered.[5] "A breach occurs when a party fails to perform a duty required by the

---

[5] To the extent Rostan argues that there was an implied contract to exceed the $1,000,000 limit, this also fails. *See Dittman v. D.B. Zwirn & Co., LP*, No. 4:09-CV-00402, 2010 WL 519692, at *6 (S.D. Tex. Feb. 8, 2010) ("Texas does not recognize a conflicting implied contract where there is an enforceable express contract between the parties on the same subject.") (first citing *Musick v. Pogue*, 330 S.W.2d 696, 699 (Tex. App.—San Antonio 1959, writ ref'd n.r.e.); and then citing *Noble Explor., Inc. v. Nixon Drilling Co.*, 794 S.W.2d 589, 592 (Tex. App.—Austin 1990, no writ)). An implied contract to make payments beyond the $1,000,000 would be contrary to the express terms of the written agreement limiting the amount CCISD was authorized by the Board to pay for Rostan's services. Regardless, even if such an implied contract existed, CCISD would be entitled to governmental immunity because it would have lacked authorization to agree to it (continue)

contract." *Smith Int'l*, 490 F.3d at 387 (citing *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied)). "When the terms of a contract are clear and unambiguous, and the facts concerning breach or performance are undisputed or conclusively established, the issue of whether the facts show performance or breach is also decided as a matter of law." *Balfour Beatty*, 173 F.Supp.3d at 395; *see also Meek*, 919 S.W.2d at 808 ("[W]hen facts are undisputed or conclusively established, there is no need to submit issues thereon to the jury.").

The terms of the contract, as amended, between CCISD and Rostan are clear: Rostan would assist CCISD "with Disaster Recovery efforts and federal funding pursuits," and in return, CCISD would pay Rostan for these services up to $1,000,000. (Dkt. No. 15-1 at 1); (Dkt. No 15-2 at 1). If Rostan's services required payment in excess of that amount, a second amendment was required. No such amendment was ever signed. As a result, no breach occurred as long as CCISD paid Rostan the $1,000,000 for its services.

In this case, the Parties agree that CCISD paid this amount. (Dkt. No. 15 at 9); (Dkt. No. 32 at 5). For this reason, the Court finds that Rostan has failed to demonstrate a genuine dispute as to whether CCISD breached the amended contract.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** CCISD's Motion for Summary Judgment. (Dkt. No. 32). While the Court finds that CCISD waived governmental

---

absent Board approval. *See* Tex. Loc. Gov't Code § 271.152 (requiring that entities be "authorized by statute or the constitution to enter into a contract" for immunity to be waived).

immunity, the Court grants summary judgment in favor of CCISD on Rostan's breach of contract claim.

It is SO ORDERED.

Signed on September 30, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**